UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

D. DOUGLAS HOWARD, JR.                          CIVIL ACTION

VERSUS                                          NO. 22-701

PAUL FERRAND, ET AL.                            SECTION "R" (2)

## ORDER AND REASONS

Before the Court is defendants' motion to dismiss plaintiff's federal civil rights claims pursuant to Fed. R. Civ. P. 12(b)(6).[1] Plaintiff opposes defendants' motion.[2] For the following reasons, the Court grants defendants' motion to dismiss and declines to exercise jurisdiction over plaintiff's pendent state law claims.

## I.    BACKGROUND

This case arises from an alleged altercation in Orleans Parish Civil District Court. Plaintiff D. Douglas Howard is a practicing attorney.[3] On the day of the alleged altercation, Howard was attending a hearing, on behalf of a client, in Orleans Parish Civil District Court.

---

[1]    R. Doc. 10.
[2]    R. Doc. 13.
[3]    R. Doc. 1 ¶ 11.

He asserts that the court's bailiff, later identified as defendant Deputy Paul Ferrand, approached Howard during the proceeding and warned him—without cause or provocation—that Howard needed to "respect this court and respect this judge."[4]   Howard alleges that after the presiding judge and her staff left the courtroom for a recess, Ferrand approached Howard once more and admonished him, saying, "the next time you disrespect my judge, you're not going to like what's going to happen to you, because I am going to take matters into my own hands."[5]   Howard asserts that while Ferrand made this statement, he simultaneously placed his hand on his holstered weapon.[6]   Howard further alleges that, upon asking Ferrand who he was talking to, Ferrand remarked that "ain't no old, white mother fucker gonna come into Orleans Parish and tell us what to do."[7]   Additionally, Howard alleges that his law firm's office manager advised him that Ferrand made an improper gesture during the hearing by pulling his finger across his throat in a manner that signaled to the testifying witness, who was adverse to Howard's client, that he should stop answering

---

[4]     *Id.* ¶ 15.
[5]     *Id.* ¶ 18.
[6]     *Id.*
[7]     *Id.* ¶ 19.

questions or disclosing information harmful to the witness's case.[8] Howard asserts that after this incident, Ferrand refused to give Howard his name or identification.[9]

On July 13, 2021, Howard sent correspondence to defendant Chief Deputy Craig McGehee regarding the May 25, 2021 incident.[10]  In the letter, Howard explained what purportedly happened in the courtroom, articulated how Howard was in fear of Ferrand and felt that the altercation was racially motivated, informed McGehee that the correspondence would serve as Howard's formal complaint regarding the incident, and advised that if Ferrand was not investigated and disciplined, Howard would file suit.[11]  On July 20, 2021, Howard allegedly received a phone call from defendant Sheriff Marlin Gusman.[12]  Gusman assertedly told Howard: "Doug, you know me[, and] I won't tolerate this kind of stuff."[13]  Howard alleges that Gusman also advised him that Gusman would conduct an investigation regarding the May 25, 2021 incident, that the investigation should

---

[8]     *Id.* ¶ 30.
[9]     *Id.* ¶¶ 22-24.
[10]    *Id.* ¶ 32.
[11]    *Id.* ¶¶ 32-42.
[12]    *Id.* ¶ 44.
[13]    *Id.* ¶ 45.

conclude in about two weeks, and that Gusman would contact Howard at the conclusion of the investigation.[14]  Howard asserts that he never heard back from the Orleans Parish Sheriff's Office, and accordingly sent an additional correspondence to Sheriff Gusman on October 13, 2021, which received no reply.[15]  Following the October 13 correspondence, Howard was allegedly contacted by Detective Julian A. Augustus via telephone.[16]  Detective Augustus travelled to Howard's office in late October of 2021 and obtained statements from Howard and his office manager regarding the incident.[17]  Augustus assertedly advised Howard that he would subsequently receive a copy of the official statements, which Howard never did.[18]  Howard further represents that he never received any subsequent communication from the Orleans Parish Sheriff Office, despite following up several times.[19]

Howard asserts that the previously described conduct amounted to a violation of his rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.  Howard also alleged

---

[14]    *Id.* ¶¶ 46-47.
[15]    *Id.* ¶¶ 52-54.
[16]    *Id.* ¶ 58.
[17]    *Id.* ¶ 59.
[18]    *Id.*
[19]    *Id.* ¶ 66.

that the department improperly failed to investigate and discipline Ferrand, amounting to a denial of equal protection and a conspiracy to violate Howard's constitutional rights.  Accordingly, Howard brought this action alleging violations of 42 U.S.C. §§ 1983, 1985, and 1986.

Now, defendants move to dismiss Howard's federal civil rights claims, contending that he has failed to state a claim and that defendants are entitled to qualified immunity.[20]  Howard opposes the motion.[21]

The Court considers the motion below.

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  The Court must accept all well-

---

[20]    R. Doc. 10.
[21]    R. Doc. 13.

pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

On a Rule 12(b)(6) motion, the Court must limit its review to the contents of the pleadings, including attachments. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). The Court may also consider documents attached to a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims. *Id.* "In addition to facts alleged in the pleadings, however, the district court 'may also consider matters of which [it] may take judicial notice.'" *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996)).

## III. DISCUSSION

### A.   Personal Capacity § 1983 Claims Against Ferrand

Howard asserts that Ferrand is liable in his personal capacity under 42 U.S.C. § 1983. Section 1983 provides a cause of action for plaintiffs whose federal rights are violated under the color of state law.

42 U.S.C. § 1983; *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998).  To state a claim under section 1983, a plaintiff must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting "under color of state law." *Id.*  The qualified-immunity defense to such claims shields government officials who perform discretionary functions from suit and liability under section 1983, "unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) (internal quotation marks omitted).  Qualified immunity may "be raised in a Rule 12(b)(6) motion to dismiss." *Nguyen v. Louisiana State Bd. of Cosmetology*, No. 14-80, 2015 WL 1281959, at *1 (M.D. La. Mar. 20, 2015).  At the motion-to-dismiss stage, the Court looks to "defendant's conduct as alleged in the complaint" to determine whether a defendant is entitled to qualified immunity.  *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).

"Once a defendant invokes the qualified immunity defense, the plaintiff carries the burden of demonstrating its inapplicability." *Floyd v. City of Kenner*, 351 F. App'x 890, 893 (5th Cir. 2009) (citing *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009)).  To satisfy

that burden at the motion-to-dismiss stage, the plaintiff must allege facts sufficient to demonstrate (1) that the defendant violated a constitutional right, and (2) that the violated right was "clearly established" at the time of defendants' alleged actions. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Thus, an "officer will be entitled to qualified immunity if no constitutional violation occurred or if the conduct 'did not violate law clearly established at the time.'" *Davis v. Hodgkiss*, 11 F.4th 329, 333 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 1127 (2022). It is within the Court's discretion to decide which prong to address first. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citing *Pearson*, 555 U.S. 223, 236 (2009)). The Court addresses each section 1983 claim against Ferrand in his personal capacity below.

### 1.    *Fourth Amendment Excessive Force Claim*

At the outset, the Court notes that Howard does not explicitly claim a Fourth Amendment violation in his complaint. Instead, Howard largely fixates on his allegations that Ferrand purportedly assaulted him under Louisiana criminal and tort law, and alleges a

violation of his purported "right" to be free from intimidation.[22]  But because of the nature of a section 1983 claim, Howard must allege a violation of a specific constitutional or statutory federal right to be entitled to relief under section 1983.  *Morales v. State*, No. 94-1194, 1996 WL 442225, at *1 n.3 (E.D. La. Aug. 2, 1996).  Thus, in his opposition to defendants' motion, Howard attempts to shoehorn the purported verbal assault into a Fourth Amendment claim, presumably on the basis of excessive use of force.[23]  Setting aside the propriety of raising the Fourth Amendment contention for the first time in an opposition brief, Howard has failed to allege facts that could support liability for a use of excessive force in violation for the Fourth Amendment.

"To bring a § 1983 excessive force claim under the Fourth Amendment, a plaintiff must first show that she was seized."  *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)).  "An officer seizes a person when he, 'by means of physical force *or* show of authority, has in some way restrained the liberty of a citizen.'"  *Id.* (quoting *Terry v. Ohio*, 392 U.S.

---

[22]    R. Doc. 1 ¶¶ 80-87.
[23]    R. Doc. 13 at 11.

1, 19 n. 16 (1968) (emphasis added)).  Here, Howard has not alleged any use of physical force by Ferrand.  *Cf. California v. Hodari D.*, 499 U.S. 621, 625 (1991) (noting that no physical force was applied where the criminal defendant was untouched by the police officer).  But a seizure may nevertheless occur without physical contact.

The second type of seizure "occurs when someone submits to a governmental show of authority that would cause a reasonable person to believe that she was not free to leave."  *United States v. Morris*, 40 F.4th 323, 327 (5th Cir. 2022) (citing *California v. Hodari D.*, 499 U.S. 621, 627–28 (1991)).  "[T]he test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person."  *Hodari D.*, 499 U.S. at 628.  Put simply, Howard's alleged facts cannot support a finding that Ferrand's words and actions would have conveyed to a reasonable person that he was being ordered to restrict his movement.  Indeed, Ferrand did not order Howard to do anything—he merely admonished him.  Nor did he otherwise imply that Howard was not free to leave.  Accordingly, Ferrand has failed to allege a Fourth Amendment claim for excessive use of force against Ferrand.

### 2. *First Amendment Retaliation Claim*

Howard also alleges that Ferrand violated his First Amendment rights by retaliating against Howard for protected speech. Howard did not press this issue in his opposition to defendants' motion, and therefore has abandoned the claim. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (concluding that plaintiff's failure to defend a claim in response to the defendant's motion to dismiss constituted abandonment of the claim). This abandonment is particularly fatal in the section 1983 context because of the burden imposed on Howard. *See Floyd*, 351 F. App'x at 893 (once a defendant invokes qualified immunity, the burden shifts to the plaintiff show its inapplicability, which includes establishing an actual violation of a federal right).

Nevertheless, the alleged facts cannot support such a claim even if Howard had briefed the issue in his opposition. To state a First Amendment retaliation claim, Howard must show that: (1) he was engaged in constitutionally protected activity; (2) Ferrand's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) Ferrand's

actions were substantially motivated against Howard's exercise of constitutionally protected conduct. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). The Court need not engage in extended analysis because Howard's claim, on its face, fails to establish the third element. Howard does not allege facts which, if true, would support a finding that Ferrand's actions were driven by the "forbidden motive" of retaliation against Howard's speech. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). To the contrary, Howard contends that he was "sitting quietly at his table, 'minding his own business,'"[24] when Ferrand approached him. There is no nexus between Ferrand's actions and Howard's speech. Indeed, Howard himself asserts that the altercation occurred because of his status as a white man.[25] Accordingly, Howard's First Amendment retaliation claim must be dismissed as well.

### 3. *Equal Protection Claim*

---

[24]   R. Doc. 1 ¶ 27.

[25]   *Id.* ¶¶ 37, 96 & 97. The Court also notes that Howard alleges he has continued to engage in courtroom speech in Orleans Parish Civil District Court despite the altercation, albeit while suffering from "emotional distress." *See id.* ¶ 69. While this may not, by itself, prove fatal to Howard's First Amendment claim, it does call into question whether Howard suffered an injury which would chill an ordinary person's speech.

Howard also alleges in his complaint that Ferrand's actions constituted a violation of the Fourteenth Amendment's Equal Protection Clause. As with the First Amendment claim, discussed in Section III.A.2, *supra*, Howard has failed to press this claim in his opposition brief—he offers no law or argument on the issue of Ferrand's violation of the Equal Protection Clause. Therefore, he has abandoned the claim and failed to meet his burden of showing a constitutional violation in response to defendants' invocation of qualified immunity. *Floyd,* 351 F. App'x at 893. Nevertheless, Howard did not allege facts which could support an equal protection claim.

Here, Howard asserts that he was verbally abused because of his race, in violation of the Fourteenth Amendment's guarantee of equal protection. In order to state a claim under the Equal Protection Clause, "a § 1983 plaintiff must either allege that (a) a state actor intentionally discriminated against [him] because of membership in a protected class, or (b) he has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment." *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 238 (5th Cir. 2012) (internal citations omitted). When a litigant specifically brings "a claim of racial discrimination under the Equal Protection Clause and

§ 1983, a plaintiff must demonstrate that the governmental official was motivated by intentional discrimination on the basis of race." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir.1997) (citing *Washington v. Davis*, 426 U.S. 229, 238–42 (1976)).

Howard's equal protection claim, like his other constitutional claims, fails.  The Fifth Circuit has explained that when an officer's conduct "consists solely of speech, there is no equal protection violation." *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999). Specifically, the *Bramer* court held that "an officer's use of a racial epithet, without harassment or some other conduct that deprives the victim of established rights, does not amount to an equal protection violation."  *Id.*  To start, it is questionable whether Ferrand's single, brief interaction with Howard can be fairly construed as harassment, as that term ordinarily connotes conduct that is repetitive or continuous in nature.  For example, Black's Law Dictionary notes that harassment is usually understood as conduct that is "repeated or persistent" in nature. *Harassment*, *Black's Law Dictionary* (11th ed. 2019) (defining harassment as "[w]ords, conduct, or action (usu. repeated or persistent) that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress to that person and

serves no legitimate purpose; purposeful vexation"). But in this instance, it was Howard who continued to engage Ferrand by asking, apparently rhetorically, who Ferrand was speaking to and what it was that Ferrand had said to him. Further, it was Ferrand that ended the altercation by walking away.

Yet even if Ferrand's remarks can be fairly viewed as harassment, Howard has failed to show how this was the type of harassment that the Fifth Circuit intimated might be actionable—that is, harassment that deprives a plaintiff of established rights. *Bramer*, 180 F.3d at 706. In this case, Ferrand began with a statement that merely admonished Howard that he needed to respect the court and the presiding judge. Later, Ferrand made a conditional statement that if Howard did not respect the judge, Ferrand would "take matters into his own hands." The qualification that Howard would suffer adverse consequences *if* he disrespected the judge, combined with the unspecific nature of the threatened consequences, persuades the Court that the allegedly threatening conduct did not amount to harassment that deprived plaintiff of a constitutional or statutory right. Indeed, the parties have not cited, and the Court has not found, any authorities sustaining an equal protection claim when the only malfeasance was a verbal threat

by a police officer. *Cf. Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993) (noting, in appellate review of excessive force action brought by pre-trial detainee, that "allegations of verbal abuse do not present actionable claims under § 1983"); *Williams v. Milligan*, No. 05-905, 2006 WL 1867327, at *4 (N.D. Tex. July 6, 2006) ("Verbal abuse by a police officer is not sufficient to state a constitutional claim under § 1983."); *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992) (affirming directed verdict for defendant on a section 1983 excessive force claim where defendant "uttered a racial slur, and threatened to 'knock [plaintiff's] remaining teeth out of his mouth' if he remained silent").

Additionally, Ferrand's placement of his hand on his holstered weapon while making his abusive remarks does not transform an unactionable, verbal threat into a cognizable section 1983 claim. S*ee, e.g., Gressett v. City of New Orleans*, No. 17-16628, 2018 WL 3642008, at *3 (E.D. La. Aug. 1, 2018), *aff'd sub nom. Gressett v. New Orleans City*, 779 F. App'x 260 (5th Cir. 2019) (dismissing a Section 1983 claim alleging a Fourteenth Amendment violation where an "officer stepped into [plaintiff's] path, with one hand on his holstered gun and the other on his holstered Taser, and [called plaintiff] 'an

asshole'").  Indeed, the Supreme Court has recognized, in the Fourth Amendment context, that an officer's holstered weapon is a non-factor. *See United States v. Drayton*, 536 U.S. 194, 195 (2002) ("[T]he presence of a holstered firearm is unlikely to be coercive absent active brandishing of the weapon.").  The Court fails to see how an officer's mere placement of his hand on his holster meaningfully changes the circumstances.  Howard also fails to make any showing that the "throat cut" gesture by Ferrand to a testifying witness, which was not observed by Howard and was relayed to him by another after the fact, violated any constitutional or statutory federal right of Howard's.

Lastly, even if the Court were persuaded that Ferrand's conduct violates the Equal Protection Clause, Ferrand is nonetheless entitled to qualified immunity because Howard has not shown that the right was "clearly established" under Fifth Circuit law at the time of the altercation.  To determine whether a right is clearly established, a plaintiff "must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc) (cleaned up).  "Although this does not mean that 'a case directly on point' is required,

'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Trammell v. Fruge*, 868 F.3d 332, 339 (5th Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).  The precedent must also be at "a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015).  As can be seen from the Court's discussion of whether Howard's equal protection rights were violated, existing precedent does not place the question "beyond debate." *al-Kidd*, 563 U.S. at 741.  To the contrary, the Court has not found any binding authorities that squarely address the issue in the context presented here.  Accordingly, Ferrand is entitled to qualified immunity and Howard's equal protection claim must be dismissed.

In finding no equal protection liability, the Court by no means condones conduct of the type alleged.  Ferrand's alleged verbal threat was unprofessional, excessive, and a clearly improper response to any perceived disrespect shown to the court, and his use of racially charged language is reprehensible.  The Court's ruling is simply that the incident does not rise to the level of an equal protection violation and does not defeat qualified immunity.

4.     *§ 1983 Conspiracy Claim*

Howard also brings a section 1983 conspiracy claim against Ferrand.  "[T]o prove a conspiracy under § 1983, a plaintiff must allege facts that indicate (1) there was an agreement among individuals to commit a deprivation, and (2) that an actual deprivation occurred." *Jabary v. City of Allen*, 547 F. App'x 600, 610 (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994)).  Howard's claim therefore fails because a section 1983 conspiracy claim is not actionable without an underlying violation of a federally protected right, which did not occur in this case.[26]  *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995). Accordingly, this claim is likewise dismissed.

**B.     Personal Capacity § 1983 Claims Against McGehee**

1.     *Equal Protection Claim*

Howard asserts that the motion should be denied as to claims against Chief Deputy McGehee in his personal capacity because he

---

[26]   The Court addresses why there was no equal protection violation in the Sheriff's Office's investigation or lack thereof in Section III.B.1, *infra*, negating that basis for an underlying constitutional violation as well.

deprived Howard of his Fourteenth Amendment right to equal protection by not properly investigating the Ferrand incident.   As the Court explains below, Howard's claims against McGehee are also deficient because there is no legal basis for a finding that Howard's constitutional rights were violated by McGehee's failure to investigate the incident.

Absent an improper, discriminatory motive guiding law enforcement's decision, "[f]ailure to investigate or prosecute an offense does not give rise to § 1983 liability." *Rolen v. City of Brownfield, Tex.*, 182 F. App'x 362, 364 (5th Cir. 2006) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir. 2001)); *see also Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir. 1990) (finding that even if the defendant-sheriff was the person with authority to decide whether or not to pursue criminal charges, he could not be held liable for failure to pursue criminal charges against the officers involved in the alleged assault of the plaintiff).   Here, although Howard alleges that Ferrand's actions were racially motivated, he does not allege that racial animus or some other similar prohibited discriminatory reasoning guided law enforcement's decision to handle the investigation into the alleged altercation the way that it did.   Rather, he contends that the Orleans

Parish Sheriff's Office turned a blind eye to Ferrand's conduct because of Ferrand's status as a deputy. The facts before the Court are altogether different from a situation where the government denies protective services to certain disfavored minorities. *Cf. DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 n.3 (1989) (citing *Yick Wo v. Hopkins*, 118 U.S. 356 (1886)).

The only case Howard cites in support of his position is *Donahue v. Strain*, an unpublished decision by another section of this court. No. 15-6036, 2017 WL 3311241, at *14 (E.D. La. Aug. 3, 2017). He urges the Court to follow the approach in *Donahue* and contends that, like the defendants in that case, McGehee is liable for intentionally failing to investigate Ferrand's actions.[27] But *Donahue* is inapposite. *Donahue* involved police denying protection to a plaintiff because of her status as the wife of an allegedly abusive officer. *Id.* In stark contrast, Howard essentially contends that the Orleans Parish Sheriff's Office denies police protection to *all* victims of crime at the hands of

---

[27] *See* R. Doc. 13 at 13 ("Defendant Ferrand's status as a law enforcement officer and his relationship with Defendant Gusman and Defendant McGehee led to a conspiracy to deprive Plaintiff of his Constitutional right to equal protection and a thorough investigation of his claims in order to protect 'one of their own' from disciplinary action.").

deputies.   Thus, Howard's version of the facts conveys that he was treated the same as other similarly situated individuals.   Accordingly, this claim must be dismissed as well.

### 2.      *§ 1983 Conspiracy Claim*

Howard also asserts a section 1983 conspiracy claim against McGehee.   As with the conspiracy claim against Ferrand discussed in Section III.A.4, *supra*, this claim must be dismissed because there was no underlying violation of Howard's federal rights.

### C.      **Personal Capacity Claims § 1983 Against Gusman**

The claims against Sheriff Gusman in his personal capacity stem from the investigation of Ferrand or lack thereof, so they must be dismissed for the same reasons as those asserted against McGehee, discussed in Section III.B.1, *supra*.   As to Gusman's potential liability from the Ferrand altercation itself, "[s]upervisory officials cannot be held liable under section 1983 for the actions of subordinates . . . on any theory of vicarious or *respondeat superior* liability."   *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).   Howard has not alleged any personal involvement by Gusman

other than in the investigation, which is not actionable as explained above.  Accordingly, the Court dismisses Howard's claims against Gusman in his personal capacity.

### D.    Official Capacity § 1983 Claims

Howard also sues the officers in their official capacities.  Because claims against officers in their professional capacities are really claims against the government entity, these claims require that a policy or custom of the Orleans Parish Sheriff's Office directly led to the constitutional violation found.  *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).  Accordingly, Howard must plead facts that plausibly establish: (1) a policymaker, (2) an official policy or custom of the Sheriff's office, and (3) a violation of constitutional rights whose "moving force" is the violation of that policy or custom.  *Railiff v. Aransas Cnty., Tex.*, 948 F.3d 281, 285 (5th Cir. 2020) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).  Further, the description of a policy or custom "cannot be conclusory; it must contain specific facts."  *Spiller v. City of Texas City, Police Dept.*, 30 F.3d 162, 167 (5th Cir. 1997).

As discussed previously, there has been no violation of Howard's constitutional rights, requiring dismissal of the official-capacity claims for this reason alone.  But Howard also fails to meet other elements of the test.  His claims against Ferrand in his official capacity must fail because the bailiff was not a policymaker—there is no indication that he was responsible for the actions of anyone besides himself. *Railiff*, 948 F.3d at 285.  While Chief Deputy McGehee may or may not have been delegated policymaking authority for the purposes of section 1983, those claims must fail for the same reasons as the claims against Gusman—Howard has not adequately alleged the existence of a relevant policy or custom.  Here, Howard merely reiterates that "[i]t was the policy and practice of Defendant, Sheriff Gusman, to employ certain deputies, detectives, and staff members, including Defendants, Deputy Ferrand, and Chief Deputy McGehee,"[28] and that "it was the custom and policy of Defendants, Sheriff Gusman and Chief Deputy McGehee, and unknown supervisors who supervised the deputies who unlawfully violated Petitioner's rights, to tolerate the practices described in the foregoing paragraphs."[29]  He also adds that defendants

---

[28]   R. Doc. 1 ¶ 111.

[29]   *Id.* ¶ 116.

"refused adequately train, direct, supervise or control Defendant officers, detectives, and staff members to prevent the violation of Petitioner's constitutional rights."[30]

But to find official-capacity liability, the Court must determined that a specific policy was the "moving force behind the constitutional violation at issue, or that the Plaintiff's injuries resulted from the . . . policy." *Spiller*, 130 F.3d at 167 (internal quotation marks and citation omitted). Further, courts may not infer that a policy was responsible "merely because harm resulted from some interaction with a government entity," and instead must identify a policy or custom that actually caused the violation. *Colle v. Brazos Cnty., Tex.*, 981 F.2d 237, 245 (5th Cir. 1993). And, with respect to the failure to train allegation, a single incident, standing alone, is generally insufficient to establish a violation. *See Connick v. Thompson*, 131 S.Ct. 1350, 1361–62 (2011).

In this case, the single, alleged failure by the Orleans Parish Sheriff's Office to adequately investigate the incident cannot give rise to official-capacity section 1983 liability, as it does not show a policy or custom. Nor does the allegation that the Sheriff's Office failed to train

---

[30]     *Id.*

Ferrand, which is based on the one altercation mentioned in the complaint.  These two isolated incidents "are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability." *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir.1984), *cert. denied*, 472 U.S. 1016 (1985).  Further, "it is nearly impossible to impute [a] lax disciplinary policy to the [defendant] without showing a pattern of abuses that transcends the error made in a single case." *Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir. 2001) (citing *Bryan County*, 520 U.S. at 410–11).  Howard has not done so here.  Plaintiff's bare allegation that "[t]his matter is bigger than this one incident"[31] does not make up for the wholesale lack of facts alleged on which a court could find this to be a recurrent issue.  Instead, plaintiff focuses on the prospective conjecture of what might happen if his action is not successful.[32]  This type of forward-looking, speculative concern is not the basis of a section 1983 action.  Plaintiff's claims against defendants in their official capacities are therefore dismissed.

---

[31]    R. Doc. 1 ¶ 77.

[32]    *Id.*

### E.    §§ 1985 and 1986 Claims

Howard also brings a conspiracy claim against the defendants under 42 U.S.C. § 1985(3).  "To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." *Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994).  Additionally, "[i]n order to assert a claim under § 1985(3), a plaintiff must allege some class-based animus." *Burns-Toole v. Byrne*, 11 F.3d 1270, 1276 (5th Cir. 1994).  While Howard alleges that Ferrand's own actions were racially charged, he has not alleged that anyone else's actions were motivated by racial animus, or that the purported conspiracy was based on racial or otherwise improper discrimination towards him.  Accordingly, plaintiff's conspiracy claim under section 1985 must be dismissed.  *See Morales v. State*, No. 94-1194, 1996 WL 442225, at *1 (E.D. La. Aug. 2, 1996) (noting that "the Court dismissed plaintiff's § 1985 claims because he failed to allege that

defendants' actions were motivated by race or class-based animus as required by the statute.").

Lastly, because a section 1986 claim is predicated on liability under section 1985, *Galloway v. Johnson*, 817 F.2d 1154, 1159 n. 2 (5th Cir. 1987), and Howard has failed to state a cause of action under section 1985, Howard's claims under section 1986 must also be dismissed. *See Hagardon v. Hingle*, No. 03-607, 2003 WL 22174273, at *3 (E.D. La. Sept. 11, 2003) ("Because plaintiffs failed to state a cognizable claim under Section 1985, they may not recover under the interrelated, dependent cause of action under Section 1986.").

### F.    Leave to Amend

Howard asks the Court for leave to amend should the Court grant defendants' motion to dismiss.[33]  Generally, the Court should "freely give" leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2); *Leal v. McHugh*, 731 F.3d 405, 417 (5th Cir. 2013).  When deciding whether leave to amend should be given, the Court considers several factors, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

---

[33]    R. Doc. 13 at 15.

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Forman v. Davis*, 371 U.S. 178, 182 (1962).  The Court finds that amendment would be futile here, as further detail of the alleged altercation would not transform the incident into an actionable claim.  Nor would amendment cure the claims stemming from the investigation of the altercation, as Howard would have to present a new, significantly different narrative.  And, the other claims essentially rise and fall with the section 1983 allegations stemming from the altercation and subsequent investigation.  In sum, to correct the deficiencies in his complaint, plaintiff would need to allege a whole new set of facts amounting to different incidents altogether, which the Court will not entertain.  Plaintiff's federal claims are therefore dismissed with prejudice.

### G.    Jurisdiction Over Remaining Claims

The Court, having dismissed Howard's federal claims, has the discretion to decline to exercise jurisdiction over the state law claims. 28 U.S.C. § 1367(c)(3); *see also Burns-Toole v. Byrne*, 11 F.3d 1270, 1276 (5th Cir. 1994) ("When all federal claims are dismissed . . . the

district court enjoys wide discretion in determining whether to retain jurisdiction over the remaining state law claims."). The Court exercises that discretion here and dismisses plaintiff's remaining claims without prejudice.

## IV.   CONCLUSION

For all of the foregoing reasons, defendants' motion is GRANTED. Plaintiff's claims under 42 U.S.C. §§ 1983, 1985, and 1986 are DISMISSED WITH PREJUDICE. Plaintiff's remaining claims are DISMISSED WITHOUT PREJUDICE.

New Orleans, Louisiana, this __20th__ day of January, 2023.

_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE